UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

MICHAEL SIERRA, ALBERT ASARO and KARAIN CRUMPTON, on behalf of themselves and all others similarly situated,

                         Plaintiffs,

       v.

EXELA ENTERPRISE SOLUTIONS, INC. and EXELA TECHNOLOGIES, INC.,

                         Defendants.

------------------------------------------------------------------X

Case No. 23-cv-04349

**CLASS ACTION COMPLAINT**

Plaintiffs, Michael Sierra ("Sierra"), Albert Asaro ("Asaro"), and Karain Crumpton ("Crumpton") (collectively, "Plaintiffs" or "Representative Plaintiffs"), by and through their undersigned attorneys, bring this action on behalf of themselves and a proposed class of similarly situated manual workers (the "Class," "Class Members") as defined below, against defendants Exela Enterprise Solutions, Inc. ("Exela Enterprise Solutions") and Exela Technologies, Inc. ("Exela Technologies") (collectively, "Defendants" or "Exela") for failure to properly pay Plaintiffs and Class Members their wages on a weekly basis as required by the New York Labor Law Article 6, § 191 ("NYLL"). Plaintiffs allege, upon personal knowledge as to themselves and upon information and belief as to other matters, as follows:

## INTRODUCTION

1. Headquartered in Irving, Texas, Defendants, through their service known as "Exela HR Solutions," provide recruitment, staffing, employee management, payroll and other human resources services to multi-national corporations, including the nation's largest financial institutions.

2. Defendants refer to their foregoing services as "human resources outsourcing" or, abbreviated, "HRO."

3. Major corporations and financial institutions outsource human resources functions to Exela. Through these partnering arrangements, Exela employed (and it continues to employ) manual workers in New York State.

4. Exela's employees in New York State who perform manual work include, *inter alia*, mail room staff, shipping and receiving workers, messengers, delivery personnel, copy center workers, and machine operators.

5. Plaintiffs were employed by Exela as reprographic production workers ("Reprographics Workers").

6. Plaintiffs' jobs involved manual work, including operating high-speed digital copiers, laminators, and cutters; carrying boxes of bound documents; sorting large quantities of booklets; receiving bulk paper supplies; shipping and delivering. Performance of these tasks often requires that workers spend long hours on their feet operating and trouble-shooting high-speed document equipment.

7. Reprographic production worker positions typically require that workers have specific physical capabilities, including, *inter alia*, the ability to stand for long periods, and the ability to frequently lift of up to 25 pounds, and occasionally lift up to 50 pounds.

8. Reprographic production worker positions generally have educational prerequisites of a high school diploma, GED and/or no educational prerequisite at all.

9. Exela touts its symbiotic relationships with its employer-clients. A video featured on Exela's website touts "Exela HR Solutions" as a "group of leading industry experts" who partner with potential employer-clients through "payroll processing, recruitment, HR business and partnering services, compensation." https://ehrs.exelatech.com/?language_content_entity=en (last visited on April 5, 2023).

10. Defendants tout their expertise in labor law "compliance" as one of the "key benefits" Exela HR Solutions provides to Exela's employer-clients. On its website, Exela describes this benefit as follows:

**Strengthen Compliance**
Stay on the right side of the law. Avoid fines, penalties, and lawsuits by ensuring all your daily tasks, policies, and employee benefits are compliant with labor laws.

https://ehrs.exelatech.com/?language_content_entity=en (last accessed on April 6, 2023).

11. Defendants further promote their HR services by claiming that they have "in-depth industry expertise" and offer "end-to-end HR strategies" to their clients. *Id.*

12. However, in practice, Defendants trampled on the wage rights of Plaintiffs and Class Members (manual workers in New York) by paying them bi-weekly instead of weekly as required by NYLL § 191. Defendants' practices had the effect of usurping the weekly wages of Plaintiffs and other Class Members. This, in turn, placed Plaintiffs and similarly situated manual workers under constant financial strain.

13. Exela functions as a sophisticated outsourcing enterprise that, by its own attestation, has extensive human resources experts and knowledge of state and federal wage and hour laws.

14. From 2014 or earlier, and continuing through in or about October 2022, Defendants failed to properly pay Plaintiffs and Class Members in New York their wages within seven calendar days after the end of the week in which these wages were earned, even though Plaintiffs and Class Members were indisputably manual workers whom Defendants were required to pay on a weekly basis.

15. Plaintiffs and the Class Members fall squarely within the low-wage workers whom NYLL § 191 is intended to protect.

16. "Outsourced" Exela workers frequently perform jobs that primarily involve manual labor. For example, an April 2023 Exela job listing on Indeed.com for a copy/print

operator position in New York City stated that the pay was $19.00 per hour, and it listed, as the position's first two responsibilities:

- Perform various Mail Center activities (sorting, metering, folding, inserting, delivery, pickup, etc.)
- Lift heavy boxes, files or paper when needed.

https://www.indeed.com/q-Exela-Technologies-l-New-York-State-jobs.html?vjk=847cc6eb41aadc51 (last accessed on April 5, 2023).

17. According to Exela's job listings, many of Exela's available positions have weekly work schedules of between 35 to 37 hours per week (*i.e.*, less than full time). This compounded the financial stress and harm caused by Exela's untimely pay practices because minimum wage workers who lack full-time incomes are particularly likely to suffer severe financial distress during the second week of two-week pay periods. For these low-wage employees, waiting an extra seven days for their paychecks causes dire hardships.

## THE PARTIES

18. Sierra is an adult, natural person who resides at Jersey City, New Jersey, who was employed by Exela as a Reprographics Worker on behalf of Defendants in New York City.

19. Asaro is an adult, natural person who resides in Howell, New Jersey, who was employed by Exela as a Reprographics Worker in New York City.

20. Crumpton is an adult, natural person who resides in Bronx, New York, who was employed by Exela as a Reprographics Worker in New York City.

21. Upon information and belief, Exela Technologies, Inc. is a Delaware Corporation with its principal place of business located at 2701 East Grauwyler Rd., Irving, Texas 75061.

22. Upon information and belief, Exela Enterprise Solutions, Inc. is a Delaware Corporation with its principal place of business located at 2701 East Grauwyler Rd., Irving, Texas 75061.

23. Upon information and belief, Exela Enterprise Solutions, Inc. is a wholly owned subsidiary of Exela Technologies, Inc.

## JURISDICTION

24. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332. There is a complete diversity of citizenship between Plaintiffs and Defendants, and the amount in controversy exceeds $75,000.00.

## VENUE

25. Venue for this action in the Southern District of New York under 28 U.S.C. § 139(b) is appropriate because a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of New York.

## CLASS ACTION ALLEGATIONS

26. Pursuant to Fed. R. Civ. P. 23, Plaintiffs seek to represent a Class consisting of all persons who worked as manual workers in their employment for Defendants in the State of New York from six years preceding this Complaint to the date of class notice in this action.

27. The Class Members are so numerous that their individual joinder herein is impracticable, and the disposition of their claims on a class basis will benefit the parties and the Court.

28. On information and belief, the Class Members number at least 500.

29. The precise number of Class Members and their identities are unknown to Plaintiffs at this time but may be readily determined through discovery.

30. Plaintiffs' claims are typical of those claims that could be alleged by any Class Member, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions.

31. Plaintiffs and Class Members have been injured in that they were compensated in an untimely manner due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected everyone in the Class similarly, and Defendants profited from the same type of unfair and/or wrongful acts as to each Class Member.

32. Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class.

33. Plaintiffs are represented by attorneys who are experienced and competent in class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

34. A class action is superior to other available methods of fair and adjudication of Class Members' claims, particularly because most, if not all, of the putative members are low-wage workers who may not have the financial resources to vigorously pursue a lawsuit and may be unaware of their rights to seek relief for Defendants' failure to pay wages to them on a weekly basis.

35. Common questions of law and fact exist as to the Class that predominate over any questions only affecting Plaintiffs and/or each Class Member individually and include, but are not limited to, the following: (a) whether Defendants compensated Plaintiffs and the Class on a timely basis; and (b) whether there was a good faith basis for Defendants' failure to comply with NYLL § 191.

## PLAINTIFFS' FACTUAL ALLEGATIONS

**Sierra.**

36. Sierra first began working for Exela as a Reprographics Worker in Manhattan in approximately March 2014 at an hourly pay rate of $15.00.

37. Sierra continued in his foregoing position until in or about October 2022.

38. Over twenty-five percent of Sierra's duties were physical tasks, including but not limited to: (a) standing for extended periods while operating high-speed printing machines, copy equipment, and scanning equipment; (b) loading machines with paper and toner; (c) document finishing, including binding, 3 hole drill, lamination, stuffing envelopes, folding, and cutting; (d) troubleshooting machines; and (e) lifting, carrying, and delivering sets of hundreds of documents and boxes to locations in a large building complex.

39. From 2014 through in or about October 2022, despite regularly spending more than twenty-five percent of his shifts performing the foregoing physical tasks, Sierra was compensated by Defendants on a bi-weekly basis.

40. For example, for the two-week pay period beginning Saturday, February 15, 2020 and ending Friday, February 28, 2020, Sierra was paid his wages on March 6, 2020. *See* Sierra's earnings statement for his pay date of March 6, 2020, attached hereto as **Exhibit A**.

41. Month-after-month, Sierra, suffered stress and financial deprivation as a result of Defendants' unlawful delays in paying him for the work he performed during the first week of each two-week pay period.

42. Sierra and similarly situated manual workers were temporarily deprived of money owed to them, and could not invest, earn interest on, or otherwise use those moneys that were rightfully theirs but which were unlawfully usurped by Defendants.

**Asaro.**

43. Asaro first began working for Exela as a Reprographics Worker in Manhattan in approximately February 2019.

7

44. Asaro continued in his foregoing position until in or about March 2020.

45. Asaro was assigned by Defendants to perform manual labor in the production department of a financial services company.

46. Over twenty-five percent of Asaro's duties were physical tasks, including but not limited to: (a) standing for extended periods while operating high-speed printing machines, copy equipment, and scanning equipment; (b) loading machines with paper and toner; (c) document finishing, including wire-o, velo, 3 hole drill, lamination, stuffing envelopes, folding, and cutting; (d) troubleshooting machines; and (e) lifting, carrying, and delivering sets of hundreds of documents and boxes to locations in a large building complex.

47. Despite regularly spending more than twenty-five percent of his shifts performing the foregoing physical tasks, Asaro was compensated by Defendants on a bi-weekly basis.

**Crumpton.**

48. Crumpton worked for Exela as a Reprographics Worker in Manhattan from in or about December 2018 through in or about June 2019, and, thereafter, from in or about September 2019 through March 2020.

49. Crumpton was assigned by Defendants to perform manual labor in the reprographics production department of a financial services company.

50. Over twenty-five percent of Crumpton's duties were physical tasks, including but not limited to: (a) standing for extended periods while operating high-speed printing machines, copy equipment, and scanning equipment; (b) loading machines with paper and toner; (c) document finishing, including wire-o, velo, 3 hole drill, lamination, stuffing envelopes, folding, and cutting; (d) troubleshooting machines; and (e) lifting, carrying, and delivering sets of hundreds of documents and boxes to locations in a large building complex.

51. Despite regularly spending more than twenty-five percent of her shifts performing the foregoing physical tasks, Crumpton was compensated by Defendants on a bi-weekly basis.

## CLAIM FOR RELIEF
### NYLL § 191(1)(a) – Late Payment of Wages
### (On Behalf of Plaintiffs and the Class – FRCP Rule 23)

52. Plaintiffs incorporate in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

53. The provisions of NYLL § 191 requiring the timely payment of wages, and the applicable supporting regulations, applied to Defendants and protect Plaintiffs and Class Members. Consequently, Defendants were required to pay Plaintiffs and Class Members weekly and not later than seven calendar days after the end of the week in which wages were earned.

54. Defendants failed to pay Plaintiffs and the Class Members on a timely basis as required by NYLL § 191(1)(a).

55. Due to Defendants' violations of NYLL § 191(1)(a), Plaintiffs and Class Members are entitled to recover the amounts of their untimely paid wages as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, Michael Sierra, Albert Asaro, and Karain Crumpton, on behalf of themselves and Class Members, seek judgment against Defendants, as follows:

1. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiff's attorneys as Class Counsel to represent members of the Class;

2. For an order declaring Defendants' conduct in violation of the law referenced herein;

3. For liquidated damages in amounts to be determined by the Court and/or jury;

4. For pre-judgment interest on all amounts awarded;

5. For an order awarding Plaintiffs and the Class their reasonable attorneys' fees, expenses, and costs of suit; and

6. Such other relief as this Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a trial by jury on all issues so triable.

Dated: May 24, 2023
New York, New York

Respectfully submitted,

RAPAPORT LAW FIRM, PLLC

By: /s/ Marc Rapaport
Marc A. Rapaport
80 Eighth Avenue, Suite 206
New York, New York 10011
Ph: (212) 382-1600
mrapaport@rapaportlaw.com

and

MILLER LAW, PLLC

By: /s/ Meredith R. Miller
Meredith R. Miller
167 Madison Avenue, Suite 503
New York, New York 10016
Ph: (347) 878-2587
meredith@millerlaw.nyc

*Attorneys for Plaintiffs and Putative Class*